UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| CHARLES MASCAGNI | CIVIL ACTION NO. 16-439 |
| VERSUS | JUDGE ROBERT G. JAMES |
| SCHLUMBERGER TECH CORP | MAG. JUDGE WHITEHURST |

## RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 26] and a Motion for Partial Summary Judgment [Doc. No. 28] filed by Defendant Schlumberger Tech Corporation ("STC"). Plaintiff Charles Mascagni opposes the motions. For reasons assigned below, the Motion for Summary Judgment is DENIED, and the Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART.

## Background

Plaintiff initiated suit on April 1, 2016, claiming that STC knowingly, willfully, or in reckless disregard failed to pay him overtime "as required by the Fair Labor Standards Act (FLSA) and/or state overtime laws." [Doc. No. 1, p. 1; 5]. He seeks unpaid back wages, liquidated damages, attorneys' fees, and costs. *Id.* at 5.

STC provides measurement and logging services to oil exploration and development companies who operate oil rigs and well sites. STC's Mission Statement is to help its clients "optimize their reservoir's performance with more efficient production and increased recovery without increasing lifting costs." [Doc. No. 26-4, p. 2].

Plaintiff was initially employed as a Measuring While Drilling ("MWD") Operator 1.  He

was later promoted to MWD II, MWD III, and Logging While Drilling 1 ("LWD").[1] As a M/LWD, Plaintiff gathered information on subsurface rock formations and transmitted that information to company men, his manager, a logging center, and STC's clients. In general, he used sensors on a tool connected to a drill to read measurements concerning the geological conditions under the well site. Plaintiff typically worked twelve hours each day for as many as ninety continuous days. Instead of paying him overtime, STC paid him a base salary plus a day rate.

On July 7, 2017, STC moved for summary judgment, arguing that it did not pay Plaintiff overtime because Plaintiff was an exempt highly compensated employee under 29 C.F.R. § 541.601. [Doc. No. 26]. The same day, STC moved for partial summary judgment, arguing that "the two-year statute of limitations applies to Plaintiff's claim because Plaintiff has failed to establish a willful violation of the FLSA, and all claims arising more than two years prior to the filing of Plaintiff's Complaint on April 1, 2016 should be dismissed as untimely." [Doc. No. 28, p. 1]. STC also argues that, even if Plaintiff is not exempt from overtime compensation provisions, Plaintiff is not entitled to liquidated damages because STC "acted in good faith and had reasonable grounds for classifying Plaintiff as exempt . . . ." [Doc. No. 28-1, p. 15-16].[2]

Plaintiff opposes both motions. STC replied to Plaintiff's opposition on August 14, 2017. [Doc. No. 42-44]. The matter is now before the Court.

---

[1] The Court will use "M/LWD" to refer to Plaintiff's position.

[2] STC omitted this argument from its Motion, [Doc. No. 28], but it included it in its Memorandum in Support, [Doc. No. 28-1].

## Law and Analysis

### I.     Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*.  "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[3]

---

[3] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[4] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must

---

[4] I.e., beyond doubt.

affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 14 F.3d 52 (5th Cir. 1993).

## II. STC's Motion for Summary Judgment

STC contends that it is entitled to summary judgment on Plaintiff's FLSA claim because Plaintiff was exempt from the Act's overtime requirements. [Doc. No. 26]. Specifically, STC contends that Plaintiff was exempt under 29 C.F.R. § 541.601 as a highly compensated employee.

Generally, whether an employee is exempt from the FLSA's overtime compensation provisions is a question of fact. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 330 (5th Cir. 2000). "However, the ultimate decision whether the employee is exempt . . . is a question of law." *Id.* The employer bears the burden of proof to show that an exemption applies to the complaining employee; that burden is by a preponderance of the evidence that the exemption is "plainly and unmistakably" applicable. *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013). The statutory exemptions are construed narrowly against the employer. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002). Job titles are not determinative; rather, it is the employee's salary and duties that determine his qualification as an exempt employee. 29 C.F.R. § 541.2.

### A. Highly Compensated Employee Exemption

The FLSA's overtime provision requires an employer to compensate any covered employee who works in excess of forty hours in a workweek "at a rate not less than one and one-half times the [employee's] regular rate . . . ." 29 U.S.C. § 207(a)(1). The FLSA, however, exempts "highly compensated employees" from this requirement. *Id.* § 541.601.

For the time period at issue in this lawsuit, the FLSA provided, "An employee with total annual compensation[5] of at least $100,000 is deemed exempt . . . if the employee customarily and regularly[6] performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee . . . ." 29 C.F.R. § 541.601(a) (2004) (amended May 23, 2016).[7] The exemption "applies only to employees whose primary duty includes performing office or non-manual work." *Id.* § 541.601(d). "A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employees job duties." *Id.* § 541.601(c).

Here, Plaintiff does not dispute that he earned at least $100,000.00 in total annual compensation. [Doc. No. 39, p. 17]. In addition, Plaintiff does not dispute that his primary duties included performing office or non-manual work. *See id.* Plaintiff does, however, dispute that he customarily and regularly performed any one or more of the exempt duties or responsibilities of an administrative employee.

### B. Duties of an Administrative Employee

"To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.201(a). When read in conjunction with

---

[5] "'Total annual compensation' must include at least $455 per week paid on a salary or fee basis." *Id.* § 541.601(b)(1).

[6] "The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." 29 C.F.R. § 541.701.

[7] Plaintiff's employment ended before the amended regulation's effective date.

29 C.F.R. § 541.601(a), § 541.201(a) exempts an employee who *customarily and regularly* performs work directly related to the management or general business operations of the employer or the employer's customers.  *See id.*

"The phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee.  To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  *Id.*

"Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption."  *Id.* § 541.201(b).[8]

---

[8] There is an additional requirement an employee must satisfy to qualify for the administrative exemption: "an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.202(a).  STC does not argue that Plaintiff meets this requirement.  Instead, STC argues that "independent judgment and discretion is not required to establish the HCE exemption."  [Doc. No. 42, p. 9].

The Fifth Circuit's opinion in *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 359 (5th Cir. 2015), supports STC's argument.  The court ruled that the plaintiffs' primary duties did not include the exercise of discretion and independent judgment, but it also concluded that the plaintiffs fell within the "highly compensated employee" exemption.  *Id.* at 359-60.

Here, the Court need not decide whether plaintiff's primary duty (or even customary and regular duty) includes exercising discretion and independent judgment because, for reasons

The Fifth Circuit has explained the distinction between work related and unrelated to management or general business operations:

> [T]he relevant distinction is between those employees whose primary duty is administering the business affairs of the enterprise [and] those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market.  Other circuits have thought to label this distinction as the administrative-production dichotomy, under which production employees (whose job it is to generate the product or service the business offers to the public) will not qualify for the exemption. . . . [T]he line between administrative and production jobs is not a clear one . . . .

*Dewan v. M-I, L.L.C.*, 858 F.3d 331, 336 (5th Cir. 2017) (internal quotation marks and sources omitted).

Deciding whether an employee's duties are directly related to the management or general business operations of the employer or employer's customers not only requires a fact finder to determine the employee's duties, it also requires analysis of "how the work directly relates to certain parts of the employer's business" or the employer's customers' businesses.  *Id.* at 334.

### C. There is a genuine dispute surrounding whether Plaintiff customarily and regularly performed work directly related to the management or general business operations of STC's customers.

Deciding whether Plaintiff customarily and regularly performed exempt duties cannot be resolved without making inferences[9] from the evidence that are subject to genuine dispute. While Plaintiff's duties are relatively undisputed, the parties do dispute the time Plaintiff devoted to each duty and, more important, the relation of each duty to the management or general

---

discussed below, genuine disputes of material fact exist concerning whether Plaintiff's duties were directly related to the management or general business operations of STC's customers.

[9] *See Smith v. City of Jackson, Miss.*, 954 F.2d 296, 298 (5th Cir. 1992) ("[H]istorical facts regarding the employment history, and inferences based on these facts, are reviewed under the factual standard[.]").

business operations of either STC or its customers. In that respect, there is a dearth of competent summary judgment evidence concerning the management and business operations of both STC and its customers.

STC first posits, generally, that Plaintiff qualifies for the administrative exemption because he customarily and regularly advised or consulted STC's customers. [Doc. No. 26-1, p. 16]. STC maintains, and supplies evidence supporting, that its clients "are oil exploration and development companies who operate oil rigs and well sites," and that Plaintiff represented STC at the well site and provided measurement and logging services to STC's clients. *Id.* at 17.

Under 29 C.F.R. § 541.201(c), "employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt." In *Dewan*, the Fifth Circuit set forth guidance on determining the duties an employee must perform to meet the exemption: "[T]he focus is not on a general concept of advice or consultancy but rather on policy determinations for how a business should be run or run more efficiently." *Dewan*, 858 F.3d at 337-38 (internal quotations marks and quoted source omitted). "Generally, this requires an exempt employee to participate in important staff functions of the . . . employer's clients or customers as opposed to the production functions." *Id.*

Here, Plaintiff was clearly not a tax expert or financial consultant while working at STC. *See* 29 C.F.R. § 541.201(c). Moreover, STC cites no evidence that Plaintiff made policy determinations for how STC's customers should run their businesses or that Plaintiff participated in the customers' important staff functions. Plaintiff did regularly communicate with certain representatives of STC's customers, [Doc. No. 39-2, p. 8-9, 34], but he avers that he "was never asked how the clients' businesses could run better or more efficiently and, if asked for such

advice, [he] would not have given it because that was not [his] job." [Doc. No. 39-3, p. 3]. Rather, he avers that he "merely gathered, tabulated, and distributed the information STC sold to its clients so they could extract oil at well sites."[10] *Id.* at 2.

As STC supplies little evidence detailing its customers' management or business operations,[11] it is difficult to ascertain the extent to which Plaintiff advised or consulted the customers. While Plaintiff did arguably provide some advice to STC's customers, a reasonable fact finder could conclude that Plaintiff's advice was intertwined with the very service STC produced and provided to those customers . . . as opposed to evidence that Plaintiff administered the customers' business affairs or advised them on policy.[12]

Next, STC contends that Plaintiff customarily and regularly performed duties for STC's customers in several functional areas explicitly listed as administrative in 29 C.F.R. § 541.201(b): quality control, safety and health, and regulatory compliance. As to quality control, STC cites Plaintiff's testimony that he "was responsible for representing [STC] at a rig site . . . [and] service quality." [Doc. No. 26-1, p. 19]. STC also points out that Plaintiff monitored data,

---

[10] *See* U.S. Dep't of Labor, Wage & Hour Div., Op. Letter (Sept. 12, 1997) (the relevant regulation is not directed at "merely providing information in the course of the customer's daily business operation.").

[11] For instance, STC claims that its "clients operate oil rigs" and cites Plaintiff's deposition for support. [Doc. No. 26-1, p. 18]. Plaintiff averred in deposition that STC serviced "exploration and development" companies. [Doc. No. 39-2, p. 47].

[12] *See Dewan*, 858 F.3d at 336 (holding that the district court erred in granting summary judgment on the issue of whether the plaintiffs' work could be classified as directly related to the general business operations of the employer's customers even where evidence showed that the plaintiffs' work required continuous and regular contact with company men at the drilling location and the plaintiffs provided recommendations, anticipated the customer's concerns with drilling mud, and addressed those concerns on the employer's behalf).

inspected equipment, identified problems with equipment, reported problems to STC's customers, and completed Service Quality Incident reports. *Id.*

Plaintiff, however, testified in deposition that he is a data gatherer and that he sends the data he gathers to someone else who checks the data for quality. [Doc. No. 39-2, p. 43, 45]. He averred in his affidavit that he does "not perform quality control on data [as] this function is performed by others at STC." [Doc. No. 39-3, p. 2]. He forwarded data he gathered to a quality control company who "would check the survey data and then send it back . . . because they have a program that checks all that data." [Doc. No. 39-2, p. 32].

Turning to "safety and health," STC presents Plaintiff's testimony that he attended job safety classes, that job safety was a priority, that he was required to comply with health and safety standards, and that he completed Job Safety Analysis reports. [Doc. No. 26-1, p. 21-22]. Plaintiff, however, avers that he was taught that safety is everyone's job, that "safety was a part of [his] job insofar as it [was] a part of everybody's job," that he "never taught a safety course," that "STC had 'safety men' and [he] was never a 'safety man,'" and that he did not have any authority to command anyone to wear safety equipment. [Doc. No. 39-3, p. 3].

As to "regulatory compliance," STC submits evidence that Plaintiff completed surveys to ensure compliance with drilling specifications and regulations. [Doc. No. 26-1, p. 22]. Plaintiff, though, avers that he is "not an expert on regulatory matters," that he does not "give advice on how to comply with regulations or how to interpret regulations," and that if a company man asked him if drilling could proceed without a survey he gave the company man documents that STC provided. [Doc. No. 39-3, p. 3-4].

11

Examining the evidence, a genuine dispute remains concerning the extent to which Plaintiff performed any of the functions explicitly listed as administrative. For instance, there remains a dispute concerning whether Plaintiff provided quality control services or whether Plaintiff simply ensured the quality of his non-administrative duties. There remains a dispute concerning whether Plaintiff regularly performed health and safety duties or whether the duties STC describes are superficial and inherent in any job in which an employer requires an employee to prepare for contingencies and prioritize safety. Moreover, STC fails to establish beyond peradventure that Plaintiff's duties relative to compliance are distinct from any other job where the employee must comply with applicable law.

On balance, while Plaintiff did perform certain duties arguably linked to STC's customers' management or business operations, the evidence also suggests that, rather than administering the business affairs of STC's customers, Plaintiff was positioned to "produce" STC's services.[13] The record does not show that, as a matter of law, the services Plaintiff provided were distinct from the service that STC exists to provide to its customers. In addition, Plaintiff's position was unique to STC's industry and unlike other jobs with universal applicability regardless of industry (i.e. compliance officers or human resource managers).

Thus, as evidence exists from which a fact finder could determine that Plaintiff's duties were intertwined with the very services and products STC exists to provide, there is a genuine dispute concerning whether Plaintiff customarily and regularly performed work directly related to the management or general business operations of STC or its customers. Drawing all

---

[13] Again, Plaintiff avers that he "merely gathered, tabulated, and distributed information STC sold to its clients," and that these services "are a product that STC produces for its clients . . . ." [Doc. No. 39-3, p. 2].

permissible inferences in Plaintiff's favor, STC has not established that the "highly compensated employee" exemption plainly and unmistakably applies. The Court therefore denies STC's Motion for Summary Judgment [Doc. No. 26].

### III. STC'S Motion for Partial Summary Judgment

STC moves for partial summary judgment and argues that a "two-year statute of limitations applies to Plaintiff's claim because Plaintiff has failed to establish a willful violation of the FLSA, and all claims arising more than two years prior to the filing of Plaintiff's Complaint on April 1, 2016 should be dismissed as untimely." [Doc. No. 28, p. 1]. STC also argues that even if Plaintiff is not exempt from the FLSA's overtime compensation provisions, Plaintiff is not entitled to liquidated damages because STC "acted in good faith and had reasonable grounds for classifying Plaintiff as exempt from the overtime provisions of the FLSA." [Doc. No. 28-1, p. 15-16].

**A**. **There is no genuine dispute surrounding whether STC willfully violated the FLSA**.

Plaintiff claims that STC "knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay overtime . . . ." [Doc. No. 1, p. 4]. STC contends that the record contains no support for this allegation. [Doc. No. 28-1, p. 14].

Under the FLSA, a two-year statute of limitations applies unless an employer's alleged violation is willful, in which case a three-year statute of limitations applies. 29 U.S.C. § 255(a). "Willful," means that an "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by" the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S.

128, 133 (1988); *see Singer v. City of Waco*, 324 F.3d 813, 821 (5th Cir. 2003). "The plaintiff bears the burden of demonstrating willfulness." *Zannikos*, 605 F. App'x at 360.

Here, Plaintiff's sole argument is that STC acted willfully because it "has a long history of being sued for FLSA overtime violations." [Doc. No. 38, p. 2]. However, all of the cases Plaintiff cites either settled, were overturned on appeal, or remain pending. No court in any of the proceedings ever ruled that STC violated the FLSA's overtime compensation provisions. Moreover, most of the proceedings involved employees with job duties distinct from Plaintiff's duties. Considering that classifying an employee depends on the employee's job duties, a judgement from another court that STC violated the FLSA's overtime provisions concerning those employees with distinct duties does not indicate that STC violated the FLSA here.[14]

As Plaintiff provides no significant probative evidence to support his claim that STC acted willfully, STC is entitled to judgment as a matter of law. A two-year statute-of-limitation period will therefore apply to Plaintiff's FLSA claim.

---

[14] Willful misclassification requires a greater showing. *See, e.g. Singer*, 324 F.3d at 821-22 (upholding a jury finding of willfulness where the employer admitted that it knew its employees were being paid incorrectly and the employer's attorney advised the employer not to investigate); *Reich v. Bay, Inc.*, 23 F.3d 110 (5th Cir. 1994) (willful misclassification where employers continued payment practice without further investigation after being informed by local Wage and Hour office that payment method violated FLSA); *Castillo v. Givens*, 704 F.2d 181(5th Cir. 1983) (willful misclassification where farm and bank owner knew of and paid minimum wage to his bank employees but not farm employees); *Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825 (5th Cir. 1973) (willful misclassification where management intentionally restricted number of overtime hours reported to less than the hours actually worked); c.f. *Allen v. Coil Tubing Servs., L.L.C.*, 846 F. Supp. 2d 678 (S.D. Tex. 2012) (holding that employee failed to show willfulness even though some employees asked managers why they were not receiving overtime, and despite its failure to seek legal advice regarding its payment method); *Benavides v. City of Austin*, 2012 WL 12882001, at *16 (W.D. Tex. Sept. 21, 2012) (finding no willfulness even where employer was "reluctant to seek a DOL opinion and a former director of the department stated that the DOL had opined the employees were exempt.").

### B. The Court denies summary judgment as premature concerning whether STC violated the FLSA in good faith.

STC argues that it acted in good faith and "took objectively reasonable steps to assure [] compliance." [Doc. No. 28-1, p. 14]. "Under the FLSA, an employer who violates the overtime provisions is liable not only for the unpaid overtime compensation, but also for 'an additional equal amount as liquidated damages.'" *Singer*, 324 F.3d at 822 (quoting 29 U.S.C. § 216(b)). However, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages . . . ." 29 U.S.C. § 260. "[A]n employer "faces a substantial burden of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA." *Singer*, 324 F.3d at 822 (citation and quotation marks removed).

Here, if the Court ultimately finds STC liable for violating the FLSA, the Court will determine whether liquidated damages are appropriate.[15] Until then, the Court declines to opine. Accordingly, the Court denies summary judgement as premature.[16]

---

[15] *See Lipnicki v. Meritage Homes Corp.*, 2014 WL 923524, at *12 (S.D. Tex. Feb. 13, 2014) ("Even if the Court were to find at this time that [the employer] acted in good faith, that would not preclude the award of liquidated damages in the event the jury finds FLSA violations. The good faith finding merely gives the Court discretion not to award liquidated damages which are otherwise mandatory.").

[16] *See Allen*, 846 F. Supp. 2d at 715 (denying summary judgment as premature on the issue of liquidated damages); *Clark v. Centene Co. of Texas, L.P.*, 44 F. Supp. 3d 674, 686 (W.D. Tex. 2014) (denying summary judgment and declining to opine until the employer was held liable); *Vallejo v. N. E. Indep. Sch. Dist.*, 2013 WL 3050484, at *6 (W.D. Tex. June 17, 2013) (declining to apply the "good faith" analysis unless and until the plaintiff prevailed); *Lipnicki*, 2014 WL at *12 (finding it imprudent to "rule on the good-faith issue," noting that there had "not yet been a finding of any FLSA violations," and concluding that "the good faith issue is one that may never need to be decided."); *Scogin v. Texas Eagle Ford Shale Magazine*, 2016 WL 632031,

## IV. Conclusion

For the foregoing reasons, STC's Motion for Summary Judgment [Doc. No. 26] is DENIED. STC's Motion for Partial Summary Judgment [Doc. No. 28] is GRANTED IN PART AND DENIED IN PART. The motion is granted as to Plaintiff's allegation that STC acted willfully. A two-year statute-of-limitation period will apply. The motion is denied as premature as to STC's contention that it acted in good faith.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

at *8 (S.D. Tex. Feb. 16, 2016) (finding that "any determination regarding the willfulness of the alleged FLSA violation is premature."); *Gallegos v. Equity Title Co. of Am.*, 484 F. Supp. 2d 589, 599 (W.D. Tex. 2007) ("Whether [the employer] acted in good faith and with reasonable grounds for believing it acted in conformity with the FLSA must be determined at trial."); *Pellerin v. Xspedius Commc'ns LLC*, 2005 WL 3311434, at *5 (W.D. La. Dec. 5, 2005); *Anderson v. Wackenhut Corp.*, 2008 WL 4999160, at *8 (S.D. Miss. Nov. 19, 2008).